IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

DIANNE B. BROOKS,
    Plaintiff,

v.          No: 3:04cv332/MCR/MD

JO ANNE B. BARNHART,
Commissioner of Social Security,
    Defendant.

_____

## REPORT AND RECOMMENDATION

This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Rules 72.1(A), 72.2(D) and 72.3 of the local rules of this court relating to review of administrative determinations under the Social Security Act and related statutes. It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying claimant Brooks' application for disability insurance benefits under Title II of the Act.

Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

## PROCEDURAL HISTORY

Plaintiff filed an application for disability benefits claiming an onset date of June 28, 1998. Her application was denied initially and on reconsideration and she

requested a hearing before an Administrative Law Judge (ALJ). A hearing was held on April 16, 2002 at which plaintiff was represented by counsel and testified. A vocational expert also testified. On May 13, 2002, the ALJ rendered an unfavorable decision (Tr. 13-20) and the Appeals Council declined review (Tr. 4-6), making the decision of the ALJ the final decision of the Commissioner, and therefore subject to review in this court. *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998). This appeal followed.

## FINDINGS OF THE ALJ

Relative to the issues raised in this appeal, the ALJ found that plaintiff had severe impairments of mild generalized osteoarthritis, fibromyalgia, left trochanteric bursitis, advanced spondyloarthropathy of C5-6, mild to moderate degenerative changes at C4-5 and C6-7, dysthymic disorder, panic disorder and chronic myofascial neck and shoulder pain, but that she did not have an impairment that met or medically equaled one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4; that her allegations regarding her limitations were not totally credible; that she had the residual functional capacity to perform light work lifting 20 pounds occasionally and 10 pounds frequently, standing and/or walking for six hours in an eight hour day, and sitting for two hours in an eight hour day, avoiding more than occasional climbing, stooping, bending, crouching, crawling, kneeling, and balancing or standing only one and one half hours at a time, and avoiding frequent use of the right wrist or heavy gripping with the right hand, and avoiding fumes, heights, temperature extremes, and high humidity; that she had limited but satisfactory ability to deal with the public, deal with work stress, maintain attention and concentration, demonstrate reliability, and understand, remember, and carry out detailed instructions; that she was unable to perform her past relevant work as a certified nursing assistant or housekeeper; that she was closely approaching advanced age with a high school education and no transferrable skills from past

relevant work; that she had the residual functional capacity to perform a significant range of light work, and that using the medical/vocational guidelines as a framework for decision-making, there are a significant number of jobs in the national economy which she could perform; and that she was not under a disability as defined in the Act.

## STANDARD OF REVIEW

The ALJ's decision will be reversed only if it is not supported by substantial evidence. *Falge, supra*. The court must determine whether the Commissioner's decision is supported by substantial evidence in the record and whether it is premised upon correct legal principles. *Chester v. Bowen,* 792 F.2d 129, 131 (11th Cir. 1986). "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983). In determining whether substantial evidence exists, the court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)(citations omitted). Findings of fact by the Commissioner that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his

age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps. A finding of disability or no disability at any step renders further evaluation unnecessary. The steps are:

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairment?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent any other work?

The claimant bears the burden of establishing a severe impairment that keeps her from performing her past work. If the claimant establishes such an impairment, the burden shifts to the Commissioner at step 5 to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. *Chester v. Bowen*, supra, 792 F.2d at 131; *MacGregor v. Bowen*, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, claimant must prove that she cannot perform the work suggested by the Commissioner. *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

### PLAINTIFF'S MEDICAL HISTORY

The earliest entry in plaintiff's medical history is dated July 14, 1995 when she was seen at the Escambia Community Clinic for stomach pain. From that time and over the period of the next three years she was seen at the clinic for various transitory conditions, including stomach pain, nausea, an umbilical hernia, headaches, dizziness, sore throat, Bell's Palsy, and heartburn (Tr. 193-211). On June

14, 1998, she went to the clinic complaining of stiff fingers (Tr. 192) and complained of the same problem on September 22, 1998 and again on September 31, 1998. She also complained of pain in her legs, feet and knees along with fatigue (Tr. 190-191). The staff physician at the clinic, George Smith, M.D., referred the plaintiff to John Luetkemeyer, a rheumatologist, apparently out of concern for possible fibromyalgia.

Dr. Luetkemeyer first saw the plaintiff on June 10, 1999. She gave a history of experiencing multiple joint pains over the prior 11 years but denied any specific joint swelling other than her in right ankle. She had morning stiffness lasting several hours, particularly in her knee, feet and hands. She experienced occasional numbness in her left forearm. She had not been x-rayed and had not been treated with any anti-inflammatory medications. Appropriate medical records from the Escambia Community Clinic were essentially negative. On physical examination she complained of pain with flexion, extension and rotation of her neck but without radiculopathy or crepitus, she had full range of motion bilaterally in her shoulders, elbows and wrists with no swelling, but she did complain of pain with flexion in her left wrist. There is no tenderness to compression in her hands, and her hips and knees were normal except for a slight hyper-mobility. Her ankles and feet were normal except for pain with movement in the right ankle and slight tenderness to compression in the right foot. Her reflexes were normal as was her muscle strength. On soft tissue examination she had tenderness in her left knee. Dr. Luetkemeyer's assessment was polyarthralgias with no clinical evidence to suggest active synovitis or underlying inflammatory arthropathy; possibility of soft tissue rheumatism; and possibility of carpal tunnel syndrome on the left. Dr. Luetkemeyer recommended a whole body bone scan and a trial of Lodine (Tr. 125-126).

Plaintiff returned on June 28, 1999 and Dr. Luetkemeyer noted that she had been given a DEXA scan rather than the bone scan that had been ordered. The Lodine had been of no benefit and she was started on Motrin. Physical examination was unchanged and a whole body bone scan was again ordered (Tr. 124). Plaintiff

returned on July 15, 1999 with basically the same complaints. Her physical examination was essentially normal. Dr. Luetkemeyer reviewed the bone scan which showed an increased uptake involving both ankles, particularly on the right and in the small joints of the hands. His assessment was abnormal bone scan consistent with degenerative arthritis and soft tissue rheumatism consistent with fibromyalgia associated with an abnormal sleep pattern (Tr. 123).

On January 17, 2000, plaintiff was seen by James Brown, M.D., a rheumatologist at the Medical Center Clinic in Pensacola on referral by Dr. Smith at the Community Clinic. She gave a history of more than ten years of pain in her hands, knees, legs, shoulders, neck, low back, hips and legs. She admitted to chronic symptoms of depression, poor sleep and fatigue. On physical examination her vital signs were normal. She had full range of motion in her hands and wrists with excellent grip strength. There was diffuse soft tissue rheumatic symptoms in both upper arms and forearms as well as her shoulders. There was diffuse soft tissue rheumatic complaints in her neck and slightly limited lumbar flexion. There was full range of motion in her hips but with some pain and diffuse soft tissue tenderness in her quadriceps and legs. She had full range of movement in her knees, ankles and small joints of the feet. Dr. Brown's impression was that plaintiff had a constellation of symptoms suggesting probable fibromyalgia with poor sleep, fatigue and depression. He ordered a serological profile and plaintiff was instructed to return in ten days (Tr. 168). When she returned Dr. Brown noted that her laboratory data base profile was compatible with her fibromyalgia diagnosis and noted that "[w]e today have developed the concept of fibromyalgia and its management." (Tr. 167). Dr. Brown referred the plaintiff back to the Community Clinic and to a fibromyalgia support group with exercise, range of motion activity and recommended lifestyle changes (Tr. 167). Plaintiff returned to Dr. Brown on March 31, 2000 on an emergency basis giving a two week history of painful stiffness in her left hip. Dr. Brown's clinical assessment confirmed left sided trochanteric

bursitis, which was injected.  His impression was fibromyalgia with non-articular rheumatism in the left hip (Tr. 165).  Plaintiff continued to be seen at the Community Clinic and complained variously of neck pain (Tr. 179), panic attacks and anxiety (Tr. 174) and weakness and dizziness (Tr. 237).

Plaintiff was examined by two consulting experts.  She saw Richard Lucey, M.D., on November 4, 1999 at the request of the State Office of Disability Determinations.  She gave Dr. Lucey a history of chronic pain in the back of her neck, hands, knees and feet, mid and low back.  On physical examination she "declined to squeeze the examiner's hands and there was give away with attempts at testing grip strength against resistance." (Tr. 132) There was no muscle weakness, atrophy or sensory deficits noted in her hands or other major joints and her deep tendon reflexes were normal.  There was full range of motion in all major joints and normal fine manipulatory movements.  In her lower extremities there was active resistance when testing range of movement in the knees but when distracted there was normal range of movement, with negative straight leg raising to 60° supine.  There was normal range of motion in all major joints.  Examination of the back revealed diminished range of movement in the mid-back but Dr. Lucey felt this was not a valid measurement as it was inconsistent with observed movements when plaintiff was not specifically being tested.  Dr. Lucey did not offer an opinion as to plaintiff's condition and did not suggest or note any limitations on her activities one way or the other (Tr. 131-133).

The plaintiff was also examined by Frank Wood, Ph.D., a psychologist, again at the request of the Office of Disability Determinations.  Plaintiff gave a physical history consistent with what she had told her treating physicians and also complained of panic attacks, lack of sleep and depression.  She denied any prior mental health treatment.  Dr. Wood noted that her depression "sounds more like frustration." (Tr. 152).  Plaintiff did not present any symptoms of thought disorder.  She did not describe forms of anxiety such as excessive worry but said that

activities she enjoys, such as sewing and gardening were limited due to her physical problems. Dr. Brown's diagnosis was dysthymic disorder and panic disorder. His prognosis was that she would continue her level of depression and anxiety absent more intensive treatment, and noted that anxiety had begun to interfere with her functioning (Tr. 152-153).

Shortly before the hearing before the ALJ, plaintiff's attorney submitted two reports to the Commissioner. First, a Medical Assessment of Ability to do Work-related Activities (Mental) was filled out by Dr. Wood, in which he opined that plaintiff rated poor in relating to co-workers, dealing with the public and dealing with stresses and rated fair in her ability to follow work rules, use judgment, interact with supervisors, and maintain attention or concentration. She rated poor in understanding, remembering and carrying out complex job instructions and fair in understanding detailed but not complex and simple job instructions. In personal social adjustments she rated poor in behaving in an emotionally stable manner, relating predictably in social situations and demonstrating reliability, and rated good in maintaining personal appearance (Tr. 242-245). Plaintiff's attorney also submitted some records from Dr. Brown. The first was a clinic record dated March 18, 2002 in which he noted that plaintiff was being seen after an 18 month hiatus and that she was applying for social security disability benefits at the request of her attorney. Her examination was unchanged. She continued to have trigger point tenderness in the neck, shoulder, low back and hip. She was noted to be under the active care of Lakeview Center for symptomatic management of depression. Dr. Brown noted that he had completed a questionnaire at the request of her attorney in the presence of the plaintiff. The plaintiff deferred any updated laboratory studies because of her financial situation and would return to Dr. Brown's office "when possible." (Tr. 247). His clinical impression was fibromyalgia with non-articular rheumatism of the left hip, chronic low back pain, and a history of chronic depression and panic attack. (*Id.*) Dr. Brown also filled out a Medical Assessment of Ability to do Work-Related

Activities (physical) in which he opined that based on her chronic lumbar syndrome and fibromyalgia, she could lift or carry 10-15 pounds, with fewer than 15 pounds frequently and up to 50 pounds occasionally when her physical problems were inactive; that she could stand and walk three to four hours in an eight hour day and sit for an unlimited period; that she could never balance, but could occasionally climb, crouch, kneel, and crawl; that she was impaired in handling and feeling in the use of her right wrist (Tr. 248-251). Dr. Brown also filled out a Clinical Assessment of Pain form, in which he opined that plaintiff's pain was present to such an extent as to be distracting to the adequate performance of daily activities or work; and that physical activity greatly increased her pain to the extent of causing distraction at work and requiring bed rest or medication (Tr. 252-253).

## DISCUSSION

The plaintiff argues that the ALJ erred in failing to failing to afford appropriate weight to the opinion of her treating physician, in improperly discounting her subjective complaints of pain, and in failing to rely on the opinion of a testifying vocational expert, and that plaintiff was disabled from her onset date as a matter of law. The Commissioner argues that the ALJ's findings were supported by substantial evidence and must, therefore, be sustained. The issue thus presented is whether the ALJ's decision that the plaintiff was not disabled, in light of her physical and mental condition, age, education, work experience, and residual functional capacity, is supported by substantial evidence in the record.

1. <u>Opinion of treating and consulting physicians</u>

Plaintiff first contends that the ALJ erred in not appropriately discounting the opinions of Drs. Brown and Wood. Absent good cause, the opinion of a claimant's treating physician must be accorded considerable or substantial weight by the Commissioner. *Stewart, supra; Lewis, supra.; Broughton v. Heckler*, 776 F.2d 960, 960-961 (11th Cir. 1985); *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986).

**Generally, a treating physician's medical opinion is entitled to greater weight than the opinion of a consulting physician.** *Wilson v. Heckler*, 734 F.2d 513, 516 (11th Cir. 1984).  In *MacGregor v. Bowen*, 786 F.2d 1050 (11th Cir. 1986), the Eleventh Circuit ruled:

> **The [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error. . . .  Where the [Commissioner] has ignored or failed properly to refute a treating physician's testimony, we hold as a matter of law that he has accepted it as true.**

**786 F.2d at 1053.  The opinion of a nonexamining physician is entitled to little weight, and, if contrary to the opinion of a treating physician, is not good cause for disregarding the opinion of the treating physician.** *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985).  **However, a brief and conclusory statement that is not supported by medical findings, even if made by a treating physician, is not persuasive evidence of disability.** *Warncke v. Harris*, 619 F.2d 412, 417 (5th Cir. 1980); *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987).  *Compare, Wilson v. Heckler, supra*.

   a.   <u>Dr. Brown.</u>

**Dr. Brown, a rheumatologist, was plaintiff's treating physician.  According to his medical assessment plaintiff could lift or carry 10-15 pounds, with fewer than 15 pounds frequently and up to 50 pounds occasionally when her problems were inactive; that she could stand and walk three to four hours in an eight hour day and sit for an unlimited period; that she could never balance, but could occasionally climb, crouch, kneel, and crawl; that she was impaired in handling and feeling in the use of her right wrist (Tr. 248-251).  According to his assessment of pain, she could not work, because the pain would effectively prevent her from doing so.  Plaintiff argues here that the ALJ did not discount this latter opinion as required.**

**The ALJ's opinion is not a model of clarity, but the court is satisfied that he discounted Dr. Brown's opinion adequately.  First and foremost the ALJ noted the**

obvious disparity between the medical assessment and the assessment of pain.  He then noted that Dr. Brown filled out the forms 18 months after last having seen the plaintiff, that he was doing it in her presence, and that he included her subjective complaints of pain in his assessment (Tr. 15).  He also discussed plaintiff's examination by Dr. Lucey, who specifically stated that she did not cooperate in the grip strength testing, and that her observed movements were contrary to her test results.

Underlying the *Hand* standard concerning subjective complaints of pain, discussed in the second section of this report and recommendation, is the need for a credibility determination concerning a plaintiff's complaints of pain.  Those complaints are, after all, subjective.  "[T]he ascertainment of the existence of an actual disability depend[s] on determining the truth and reliability of [a claimant's] complaints of subjective pain."  *Scharlow v. Schweiker*, 655 F.2d 645, 649 (5th Cir. 1981) (holding that the ALJ must resolve "the crucial subsidiary fact of the truthfulness of subjective symptoms and complaints").[1]  People with objectively identical conditions can experience significantly different levels of pain, and pain is more readily treated in some than in others.  "Reasonable minds may differ as to whether objective medical impairments could reasonably be expected to produce [the claimed] pain.  This determination is a question of fact which, like all factual findings by the [Commissioner], is subject only to limited review in the courts . . . ."  *Hand, supra,* at 1548-49.  It is within the ALJ's "realm of judging" to determine that "the quantum of pain [a claimant] allege[s] [is] not credible when considered in the light of other evidence."  *Arnold v. Heckler*, 732 F.2d 881, 884  (11th Cir. 1984).  Thus, a physician may be told by a patient that he or she is in pain, and the physician may believe it, but the ALJ is not bound by that.  The evidence as a whole, including the

---

[1] **Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit.**  *Bonner v. Pritchard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

*Case No: 3:04cv332/MCR/MD*

existence of corroborating objective proof or the lack thereof, and not just a physician's belief, is the basis for the ALJ's credibility determination.

The ALJ also accepted a large part of Dr. Brown's medical assessment. That is, his determination of plaintiff's residual functional capacity was nearly consistent with Dr. Brown's opinion that plaintiff's could lift or carry 10-15 pounds, with fewer than 15 pounds frequently and up to 50 pounds occasionally; that she could stand and walk three to four hours in an eight hour day and sit for an unlimited period; that she could never balance, but could occasionally climb, crouch, kneel, and crawl; that she was impaired in handling and feeling in the use of her right wrist. The only difference of any significance was the ALJ'S finding that plaintiff could stand and walk for six hours rather than four hours. The ALJ found that plaintiff's subjective complaints of pain were not entirely credible, that she stopped working when she obtained custody of two infant nieces,[2] and that Dr. Lucey felt she was uncooperative or malingering. An ALJ can reject the opinion of a treating physician where the physician's opinion is based largely on the patient's subjective complaints of pain. *Crawford v. Commissioner of Social Security*, 363 F.3d 1155 (11th Cir 2004). There was substantial record evidence to support the ALJ's decision on the plaintiff's residual functional capacity and his rejection of part of Dr. Brown's opinion. Plaintiff is not entitled to reversal on this ground.

          b.    <u>Dr. Wood.</u>

Plaintiff also argues that the ALJ did not properly discount the opinion of Dr. Wood, the psychologist. Dr. Wood was a consulting physician so, as the ALJ noted, his opinion is not entitled to any particular amount of weight. Moreover, the ALJ

---

[2] Plaintiff contests this. She says that she did not testify that she stopped working "at the time" she got the children, but testified that she stopped working because of her pain (Tr. 17, 263). That is correct. However, the ALJ did not find that plaintiff quit working *because* she got custody of the children, only that the two things happened at the same time. That finding is an inference that could be taken from the evidence, since at the time of the hearing the children were five years old and plaintiff claimed to have been disabled for four years (Tr. 260).

*Case No: 3:04cv332/MCR/MD*

held that it was entitled to no weight because the assessment form Dr. Wood filled out 19 months after seeing the plaintiff was inconsistent with his evaluation report, in which his comment on plaintiff's depression was that it sounded more like frustration. His original diagnosis was dysthemic disorder, not depression, but his subsequent opinion on the assessment form was that plaintiff suffered from depression. There was substantial record evidence to support the ALJ's decision to discount Dr. Wood's opinion, and plaintiff is not entitled to reversal on this ground.

2. **Plaintiff's subjective complaints of pain.**

Plaintiff next contends that the ALJ erred in not accepting her subjective complaints of pain. As this court is well aware, pain is treated by the Regulations as a symptom of disability. Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, ". . . unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms." *Accord* 20 C.F.R. § 416.929. In *Hand v. Heckler*, 761 F.2d 1545, 1549 (11th Cir. 1986), the Eleventh Circuit adopted the following additional pain standard:

> There must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

The Eleventh Circuit continues to follow the *Hand* test. *Wilson v. Barnhart*, 284 F.3d 1219 (11th Cir. 2002); *Kelley v. Apfel,* 173 F.3d 814 (11th Cir. 1999); *Elam v. Railroad Retirement Bd.*, 921 F.2d 1210, 1216 (11th Cir. 1991); *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *Martin v. Railroad Retirement Bd.,* 935 F.2d 230, 233 (11th Cir. 1991).

The Eleventh Circuit has also approved an ALJ's reference to and application

of the standard set out in 20 C.F.R. § 404.1529, because that regulation "contains the same language regarding the subjective pain testimony that this court interpreted when initially establishing its three-part standard." *Wilson, supra*, 284 F.3d at 1226. Thus, failure to cite to an Eleventh Circuit standard is not reversible error so long as the ALJ applies the appropriate regulation.

But "[w]hile both the Regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." *Elam*, 921 F.2d at 1216. The court has held that "[p]ain alone can be disabling, even when its existence is unsupported by objective evidence." *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (citing *Walker v. Bowen*, 826 F.2d 996, 1003 (11th Cir. 1987)). However, the absence of evidence to support symptoms of the severity claimed is a factor that can be considered. *Id.*; *Tieniber v. Heckler,* 720 F.2d 1251, 1253 (11th Cir. 1983).

Finally, "[i]f the Commissioner refuses to credit [subjective testimony of the Plaintiff concerning pain] he must do so explicitly and give reasons for that decision. . . . Where he fails to do so we hold as a matter of law that he has accepted that testimony as true." *MacGregor v. Bowen*, 786 F.2d at 1054; *Holt v. Sullivan*, 921 F.2d at 1223. "Although this circuit does not require an explicit finding as to credibility, ... the implication must be obvious to the reviewing court. The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered [plaintiff's] medical condition as a whole." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (internal quotations and citations omitted). The reasons articulated for disregarding the plaintiff's subjective pain testimony must be based upon substantial evidence. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991).

The ALJ'S findings on plaintiff's subjective complaints of pain were discussed above. The ALJ discounted part of Dr. Brown's opinion because it relied largely on

*Case No: 3:04cv332/MCR/MD*

plaintiff's subjective complaints. As was shown above, there was substantial record evidence to support this finding, and plaintiff is not entitled to reversal on this ground.

3.      <u>Hypothetical question.</u>

Finally, plaintiff contends that the ALJ erred in not relying on the vocational expert's opinion that plaintiff could not work if her condition was as she described. A hypothetical question must comprehensively describe the plaintiff's condition, and vocational expert testimony that does not accurately address that condition cannot be considered substantial record evidence.  *Pendley v. Heckler,* 767 F.2d 1561, 1563 (11th Cir. 1985).  However, "the ALJ [is] not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported."  *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1161 (11th Cir. 2004).  The findings included in the hypothetical were the ones ultimately found by the ALJ, and there was no error.

Accordingly, it is respectfully RECOMMENDED that the decision of the Commissioner be AFFIRMED, that this action be DISMISSED and that the clerk be directed to close the file.

At Pensacola, Florida this 9th day of August, 2005.


/s/ *Miles Davis*
**MILES DAVIS
UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  See 28 U.S.C. § 636;** *United States v. Roberts,* **858 F.2d 698, 701 (11th Cir. 1988).**

*Case No: 3:04cv332/MCR/MD*